## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

NERI TAWFIQ,

            *Plaintiff,*

*v.*

TERESA DUFRESNE,

            *Defendant.*

_____/

Case No. 1:22-cv-10164
District Judge Paul D. Borman
Magistrate Judge Patricia T. Morris

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS
## (ECF No. 14)

**I.    RECOMMENDATION**

For the following reasons, I recommend that the Court **GRANT** Defendant's motion to dismiss (ECF No. 14) and **DISMISS** Plaintiff's complaint **WITHOUT PREJUDICE**.

**II.    REPORT**

**A.    BACKGROUND**

Neri Tawfiq is a veteran and a patient of the United States Department of Veterans Affairs ("VA"). (*See* ECF No. 1, PageID.17–19, 39). Tawfiq worked as a pharmacist at the VA's Saginaw Medical Center until March 2021 when Christopher Cauley, the Director of the Medical Center, terminated him for inappropriate "conduct" upon the recommendation of Tawfiq's supervisor, Teresa Dufresne. (*See id.* at PageID.28–29, 35).

1

After Tawfiq learned that he had been terminated, he went to the VA later that day to discuss his termination with Dufresne.  (*Id.* at PageID.40–41).

Although Tawfiq asked Dufresne to provide "a list of things he did [which] led to [his] termination," she provided him with few details, explaining that he was terminated for a "conduct issue," and could appeal her decision.  (*Id.*)  Following this conversation, Tawfiq left the pharmacy for a few minutes before he returned, "stating that he [still] wanted to talk."  (*Id.*)  According to a pharmacy employee, Tawfiq had become "loud" and "aggressive," and, seeking to diffuse the situation, this employee called for an officer. (*Id.* at PageID.40).  Tawfiq then left the area but was later seen speaking with police elsewhere in the facility.  (*Id.*)

According to Tawfiq, the "conduct issue" DuFresne referred to was likely an email he sent to her shortly before his termination.  (*Id.* at PageID.28, 35).  In this email, Tawfiq expressed his frustration with Dufresne regarding an incident where a coworker of his had complained to DuFresne about something Tawfiq had done, and upon receiving this complaint, DuFresne shared it with her supervisors without first obtaining Tawfiq's version of events.  (*Id.* at PageID.35).  Tawfiq concluded his email by offering to "help" DuFresne "properly handle" similar situations in the future, and he assured Dufresne that offer was sincere and "not meant to be disrespectful."  (*Id.*)

DuFresne forwarded this email to Human Resources, describing Tawfiq's comments as "totally inappropriate," and asking for advice "on how to proceed."  (*Id.*) Tawfiq alleges that the reason he was terminated, rather than suspended, for the comment

2

was because he is a "Black man" and a "disabled veteran." (*Id.*)  In support of this allegation, Tawfiq notes that the Saginaw VA once suspended a female pharmacy technician for twenty-one days before bringing her back to work. (*Id.*)  However, Tawfiq does not explain the circumstances surrounding this employee's suspension, he does not state whether this individual was able-bodied, he does not name the supervisor who suspended this individual, and he does not he clarify this individual's race. (*Id.*)

About a week after Tawfiq was terminated, the Saginaw VA Medical Center's Disruptive Behavior Committee ("DBC") reviewed Tawfiq's outburst and determined that he posed a risk to patient and staff safety when visiting VA medical facilities as a patient. (*See id.* at PageID.17–19).  Based on that determination, the DBC placed a "Patient Record Flag" in Tawfiq's record which required Tawfiq to check in with VA Police whenever he arrived at a VA facility. (*Id.*)  After checking in, VA police were required to "escort[]" Plaintiff to and from his appointments. (*Id.* at PageID.18).

At some point after his termination, Tawfiq filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that he was subjected to a hostile work environment. (*See id.* at PageID.26, 34).  Specifically, Tawfiq alleged that his coworkers at the VA belittled him and made inappropriate comments about his race. (*Id.* at PageID.26).

Tawfiq eventually filed the present action against DuFresne, seeking monetary damages, and DuFresne moved to dismiss Tawfiq's complaint. (ECF Nos. 1, 14). Although the undersigned ordered Tawfiq to file a response brief, Tawfiq chose instead

3

to request a hearing before the Court.  (ECF Nos. 15, 17, 18).  In his request, Tawfiq explained that he believed the AUSA assigned to this matter "submitted fraudulent information to" the Court, but he did not elaborate on this statement.  (ECF No 18, PageID.123).

### B.    STANDARDS OF REVIEW

DuFresne challenges Tawfiq's complaint under Rule 12(B)(1) and Rule 12(b)(6). (ECF No. 14, PageID.98-99.) Where a defendant files a motion to dismiss under both 12(b)(1) and 12(b)(6), the Rule 12(b)(1) challenge must be addressed first because "the Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Under Rule 12(b)(1) a defendant may move to dismiss a complaint on the grounds that the district court lacks subject matter jurisdiction.  Where subject matter jurisdiction is challenged under Rule 12(b)(1), it is the plaintiff's burden to prove that the district court has jurisdiction.  *See id.*  The court will accept the complaint's factual allegations as true insofar as the defendant facially challenges the "sufficiency of the pleading" itself.  *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  However, the complaint's factual allegations are not presumptively true where there is a factual controversy.  Instead, the court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist."

Defendant also challenges the sufficiency of Tawfiq's complaint under Rule 12(b)(6).  A complaint must provide "a short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

Because Tawfiq filed his complaint pro se, his pleadings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

## C.    ANALYSIS

Tawfiq brings four claims against DuFresne. (ECF No. 1, PageID.5). First, he alleges that DuFresne "[g]ave intentionally false statements" which later served as the basis for his Patient flag. (*Id.*) Second, Tawfiq alleges that Dufresne "gave false information" to both the "EEOC" and to "the Tenth District Circuit Court of [Michigan]." (*Id.*) Third, Tawfiq seeks to hold Dufresne liable for "shar[ing]" his "license plate"

number with "all the VA across the country." (*Id.*) And last, Tawfiq brings a "wrongful termination" claim against DuFresne. (*Id.*)

### 1.     Wrongful Termination

I suggest that the Court lacks jurisdiction over Tawfiq's wrongful termination claim. Although Tawfiq does not specify the precise basis for his wrongful termination claim, it appears that Tawfiq intends to either bring a common law wrongful termination claim or a claim under Title VII of the Civil Rights Act of 1964. *See Perles v. SpartanNash Co.*, No. 350869, 2020 WL 7635772, at *2 (Mich. Ct. App. Dec. 22, 2020) (recognizing that employers may be held liable for terminating employees in violation of public policy); (ECF No. 1, PageID.26, 35).

But however Tawfiq's wrongful termination claim is construed, it must be dismissed. First, Tawfiq's complaint fails to state a plausible claim for relief under Title VII. Only employers may be held liable under Title VII, as "Title VII actions simply may not be brought against employees and supervisors in their individual capacities." *Fisher v. Merryman*, 32 F. App'x 721, 723 (6th Cir. 2002) (citing *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)); s*ee also Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002) (explaining that the "relevant department head" is the only "proper defendant" in a Title VII action brought by a federal employee). Because Tawfiq names DuFresne

6

as the Defendant, rather than his employer, he fails to state a plausible claim for relief.[1]

(ECF No. 1, PageID.1–2).

And if Tawfiq intends to bring a wrongful termination claim under Michigan tort law, or any other legal theory, then the Court would lack subject matter jurisdiction. Outside of Title VII, the Civil Service Reform Act ("CSRA") provides the exclusive recourse for federal employees who wish to challenge their termination. However, the Merit Systems Protections Board and the Federal Circuit hold exclusive jurisdiction over CSRA claims. 5 U.S.C. §§ 7701, 7703(d), 7512 (2018); *Sweeney v. Napolitano*, No. H-08-3701, 2009 WL 10718879, at *2 (S.D. Tex. Aug. 21, 2009); *Coe v. N.L.R.B.*, 40 F.Supp.2d 1049, 1053 (E.D.Wis.1999) (Title VII of the Civil Rights Act of 1964, as

---

[1] Accordingly, the Court need not address DuFresne's argument that Tawfiq failed to exhaust his administrative remedies under Title VII before bringing this action. (ECF No. 14, PageID.103). Because the Court need not address exhaustion to dismiss Tawfiq's Title VII claims, I suggest that the Court should expressly decline to consider DuFresne's exhibit in support of this argument (ECF No. 14-5), and treat DuFresne's motion, as it relates to Tawfiq's Title VII claims, as a motion to dismiss rather than a motion for summary judgment. *See Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020); *Peeples v. City of Detroit*, 891 F.3d 622, 631 (6th Cir. 2018) ("[F]ailure to obtain a right to sue letter is a condition precedent, rather than a jurisdictional defect . . . ."). Further, I note that DuFresne' remaining three exhibits are relevant to DuFresne's argument that the Court should substitute the United States as the proper Defendant to any tort claims, which is, effectively, a distinct motion from her motion to dismiss. *See Singleton v. United States*, 277 F.3d 864, 870–73 & n.4 (6th Cir. 2002) (distinguishing between a motion to dismiss and a motion to substitute). Because these exhibits are not relevant to Dufresne's motion to dismiss, they need not be excluded. *See* Fed. R. Civ. P. 12(d); (ECF No. 14-2; ECF No. 14-3; ECF No. 14-4). But even if the Court were to construe these three exhibits as part of DuFresne' motion to dismiss, the Court could still consider these exhibits because they would only be relevant to his 12(b)(1) motion. *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009); *see also Rodriguez v. United States*, No. 1:13 CV 01559, 2015 WL 3645716, *3–4 (N.D. Ohio June 10, 2015).

amended, and the CSRA provide the exclusive remedies for federal employees with employment discrimination claims and nondiscriminatory employment claims, respectively). Accordingly, I suggest that the Court should dismiss Tawfiq's wrongful termination claim.

### 2.     Tawfiq's Remaining Claims

Without identifying any underling cause of action, Tawfiq seeks to hold DuFresne liable for providing "false information" to the EEOC and a Michigan court, for making "false statements" which later served as the basis for his patient flag, and for providing his license plate number to other VA employees. (ECF No. 1, PageID.5). I suggest that under each claim, Tawfiq fails to plausibly allege that he is entitled to relief.

To state a plausible claim for relief, a plaintiff must not only allege facts demonstrating that the defendant harmed him or her, but the plaintiff must also demonstrate that he or she can obtain relief under "some viable legal theory." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 562–63). In other words, a plaintiff cannot simply accuse a defendant of inflicting harm and expect to obtain relief—the plaintiff must ground his allegations in some law which both prohibits the defendant's conduct and provides the plaintiff with a private right of action to enforce the law in a civil suit. *Franklin v. Gwinnett Cty. Pub. Schools*, 503 U.S. 60, 66 (1992) (explaining that a federal court's "power to award appropriate relief" depends on the existence of a "cause of action" under

the "Constitution or law of the United States"); *see also Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).

Of course, a pro se plaintiff need not explicitly name a cause of action where one can be reasonably inferred by the court. *Taylor v. Quayyum*, No. 1:16-cv-1143-GHW, 2021 WL 6065743, at *8 (S.D.N.Y. Dec. 21, 2021). No matter how "inartfully pleaded," a pro se plaintiff's complaint "must be" construed "liberally" and "held to [a] less stringent standard[] than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see* Fed. R. Civ. P. 8(e) (providing that all complaints "must be construed so as to do justice").

Even so, a court's duty to liberally construe pro se complaints is not without limits. "[C]ourts should not have to guess at the nature of the claim asserted," and they need not "conjure up claims" that were "never presented." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Frengler v. General Motors*, 482 F. App'x 975, 977 (6th Cir. 2012). For example, in *Frengler*, the Sixth Circuit held that a complaint which consisted "of eighty-one pages of medical bills, medical records, and worker's compensation proceeding records, without any suggestion of a cause of action," did not state a plausible claim for relief. 482 F. App'x, at 977; *see also Knox v. Navient*, No. 2:18-cv-1198, 2019 WL 484474, at *3 (S.D. Ohio Feb. 7, 2019) (holding that the Court could not "determine the nature of" a claim summarily alleging "usury and racketeering").

Likewise, here, Tawfiq neglects to identify any cognizable cause of action.  While Tawfiq mentions discrete events with which he takes issue (albeit, with minimal detail), none of these allegations appear to implicate any law which might provide him a private right of action.  (*See* ECF No. 1, PageID.5).  And like in *Frengler*, Tawfiq's numerous attachments do not save him from his failure to identify a cause of action.  *Cf.* 482 F. App'x at 977.  These document do not help the court to discern any cause of action Tawfiq may have intended to bring, and by providing these documents to the Court in an unorganized fashion, without explaining their significance, Tawfiq only adds ambiguity to his already nebulous complaint.  The Court can do no more than speculate as to what claims Tawfiq intends to bring against DuFresne, and therefore, I suggest that Tawfiq fails to state a plausible claim for relief.  *See Wells*, 891 F.2d at 594.

Still, DuFresne interprets these allegations as a single defamation claim.  (ECF No. 14, PageID.96, 99–100).   And there is some support for her interpretation—Tawfiq accuses DuFresne of "intentionally" making "false," "fabricated," and "slander[ous]" statements.  (ECF No. 1, PageID.5).  However, it appears that Tawfiq considered, but ultimately declined, to bring a defamation claim.   On the same page that Tawfiq accuses DuFresne of making intentionally false statements, he explains that he requests "$850,000" in damages, in part, for "defamation." (*Id.*)  But Tawfiq then crossed out the word "defamation" and initialed this change.  (*Id.*)  In the undersigned's view, this demonstrates that Tawfiq was aware that he could have brought a defamation claim but chose not to.

However, even if the Court were to construe these allegations as a defamation claim, I suggest that the Court would lack subject matter jurisdiction.  Tawfiq seeks to hold DuFresne liable for statements she made in connection to Tawfiq's termination and patient flag—actions which squarely fall within the scope of her official duties.  (*See* ECF No. 1, PageID.5).  And where, as here, an individual seeks to recover damages for a tort committed by a federal employee liable for conduct that fell within the "scope of [his or her] employment," the Federal Tort Claims Act ("FTCA") provides the plaintiff's exclusive recourse.  28 US.C. §§ 1346(b)(1), 2672, 2697(b)(1) (2018).  And under the FTCA a plaintiff may only bring a tort action against the United States—federal employees are immunized from liability.  *Simmons v. Himmelreich*, 578 U.S. 621, 628 (2016); *Briscoe v. United States*, 268 F. Supp. 3d 1, 9 (D.D.C. July 25, 2017).  *Compare Meyer*, 510 U.S. at 476 (1994) (recognizing that the proper defendant in an FTCA action is the United States, not a federal agency), *with Loeffler v. Frank*, 486 U.S. 549, 562 n.8 (1988) (recognizing that an official capacity suit against a federal official is a suit against the official's agency, rather than the United States).  *See generally Premo v. United States*, 599 F.3d 540, 544 (6th Cir. 2010) (explaining that the FTCA provides a limited waiver of the United States' sovereign immunity).

Here, however, despite bringing a defamation claim for conduct that occurred within DuFresne's scope of employment, Tawfiq named DuFresne, rather than the United States, as the defendant.  (ECF No. 1, PageID.1, 2).  Tawfiq's defamation claim, therefore, would not fall under the scope of the FTCA, and because the FTCA provides Tawfiq's

exclusive recourse, the Court lacks jurisdiction to consider a defamation claim against DuFresne. *Cf. Harper v. U.S. Dep't of the Interior*, No. 21-00197, 2022 WL 425058, at *5 (D. Idaho Feb. 11, 2022); *Elliott v. Telerico*, No. 15-3156, 2015 WL 4130755, at *3 (N.D. Cal. July 8, 2015); *Tolson v. Stanton*, 844 F. Supp. 2d 53, 57 (D.D.C. 2012).  *See generally Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute").

Because Tawfiq does not allege any facts which, if taken as true, would demonstrate that DuFresne acted outside the scope of his employment, the Court would lack jurisdiction over a defamation claim against DuFresne, and it therefore should not reach DuFresne's request to substitute the United States as the defendant.[2] *See Singleton*,

---

[2] In *Singleton v. United States*, the Attorney General simultaneously removed a tort action against a federal employee from an Ohio Court and substituted the United States as the defendant, pursuant to 28 U.S.C. § 2679(d)(2).  277 F.3d 864, 867–68 (6th Cir. 2002). Although the plaintiff "did not allege any facts in his complaint or in subsequent filings that, if true, would demonstrate that" the defendant acted outside the scope of his employment, the Sixth Circuit held that the district court properly granted the federal employee's motion for substitution. *Id.* at 872.  In doing so, the Sixth Circuit tacitly acknowledged that the court held subject matter jurisdiction over the complaint, which did not name the United States as the defendant, despite its failure to allege specific facts demonstrating that the employee acted outside the scope of his employment. *See id.* However, where the attorney general removes a case pursuant to § 2679, the district court obtains subject matter jurisdiction even if the state court lacked jurisdiction over the complaint. *Cobb v. United States*, No. 21-2419, 2022 WL 2046109, at *3 (D.D.C. June 7, 2022) (citing *Osborn v. Haley*, 549 U.S. 225, 231 (2007)).  And the district court's jurisdiction is "so durable that it may never be lost." *Id.*  But unlike *Singleton*, Tawfiq originally filed his complaint in federal, not state, court.  (*See* ECF No. 1).  Moreover, while providing no supporting facts, the complaint in *Singleton* did allege that the defendant's conduct fell "outside the scope of his official duties." *Singleton*, 277 F.3d at

277 F.3d at 872; *cf. Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998);

*Freeman v. United States*, No. 13–CV–02421 WHO, 2014 WL 1117619, at *5 (N.D. Cal.

Mar. 19, 2014).   But even if the Court did construe Tawfiq's complaint as alleging a

defamation claim and even if it were to substitute the United States for DuFresne and

allow Tawfiq's suit to proceed under the FTCA, I suggest that the Court would still lack

subject matter jurisdiction.   Should the Court substitute the United States as the defendant

to Tawfiq's tort claims, then these claims would "fall[] under the governance of the"

FTCA.   *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419–20 (1995).   However,

while the FTCA provides Tawfiq's exclusive remedy, its waiver of sovereign immunity

is not without limits.   *See United States v. Smith*, 499 U.S. 160, 166 (1991) ("[T]he FTCA

[is the] exclusive mode of recovery for the tort of a government employee even when the

FTCA itself precludes Government liability.").   And here, the FTCA's intentional tort

exception would preclude the Court from exercising jurisdiction.   *See FDIC v. Meyer*,

510 U.S. 471, 475 (1994) (explaining that sovereign immunity is a "jurisdictional" issue).

The FTCA does not waive sovereign immunity from defamation claims except for those

committed by "investigative" officers.   28 U.S.C. §2680(h); *see also Rector v. United

States*, 243 F. App'x 976, 980 (6th Cir. 2007).   Thus, even if the Court did substitute the

United States for DuFresne, it would still lack jurisdiction over Tawfiq's complaint.

## III.   CONCLUSION

---

868.   On the other hand, Tawfiq's complaint fails to even make a bare allegation that
DuFresne acted outside the scope of his employment.   (ECF No. 1).

For these reasons, I recommend that the Court **DISMISS** Plaintiff's complaint **WITHOUT PREJUDICE**.[3]

## IV.  REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which

---

[3] Dismissals for lack of subject matter jurisdiction should be without prejudice because the court "lacks the power to reach the merits of the case." *Revere v. Wilimington Fin.*, 406 F. App'x 936, 937 (6th Cir. 2011) (citing *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005)).

it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 6, 2022                    S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge